IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| DORA ESTELLA GAY, | * | CHAPTER 7 |
|     Debtor | * | |
| | * | CASE NO. 1:14-bk-01093-MDF |
| ANTHONY BOTEK, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | ADV. NO. 1:14-ap-00138MDF |
| | * | |
| DORA ESTELLA GAY, | * | |
|     Defendant | * | |

**OPINION**

Before me is the Complaint filed by Anthony Botek ("Plaintiff") requesting the Court to except his claim against Dora Estella Gay ("Debtor") from discharge. For the reasons set forth below, Plaintiff has failed to meet his burden to establish grounds for relief under either 11 U.S.C. § 523(a)(2) or § 523(a)(6). Accordingly, judgment will be granted in favor of Debtor and against Plaintiff.

**I. Procedural History**

Debtor filed her Chapter 7 bankruptcy petition on March 13, 2014. She listed Plaintiff as a creditor holding an unsecured claim for "Rent Arrearage [and] Repairs" in the amount of $6010. On June 20, 2014, the Chapter 7 Trustee filed his Report of No Distribution, signaling that there were no assets to be administered in the estate for the benefit of creditors. On July 9, 2014, an order was entered granting Debtor a discharge under 11 U.S.C. § 727.

On June 19, 2014, Plaintiff, acting *pro se*, filed a Complaint alleging that his claim should be excepted from discharge. He asserts that Debtor engaged in fraud when she completed an application to rent a house owned by Plaintiff and that by refusing to pay rent, Debtor willfully

and maliciously injured Plaintiff. Debtor filed an Answer with Affirmative Defenses on July 21, 2014. Trial was held on June 25 and 30, 2015, and the matter was taken under advisement.[1]

## II. Factual Findings

On or about November 14, 2012, Debtor submitted to Plaintiff an application (the "Application") to rent the premises at 519 Rutherford Road, Harrisburg, PA (the "Property") for one year. Sumter Black ("Black") also submitted an application as a co-tenant on the Property. Plaintiff has engaged in the business of renting and managing residential properties for fifteen years. As part of the application process, Plaintiff routinely obtains a background check for any potential tenant. In connection with the Application, Debtor was required to submit to a background check performed by SafeRent.

In the Application, Debtor listed her "Present Address" as 886 Fahs Street, York, Pennsylvania and her "Prior Address" as 304 Arbys Road, Harrisburg, Pennsylvania. She stated that she had lived at the Arbys Road address for approximately six years. Debtor did not disclose that immediately prior to moving to 886 Fahs Street she had resided several other places, including King Arthurs Court. Although the Application did not require Debtor to state whether a judgment had been entered against her in connection with any of her prior rentals, in 2009, King's Manor, the landlord of Debtor's King Arthurs Court apartment obtained a judgment against Debtor in state court in the amount of $2474.78 for rental arrears. After the judgment was entered, Debtor moved out of the apartment voluntarily.

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

2

The Application also required Debtor to respond to the following question: "Have you ever willfully and intentionally refused to pay rent when due?" Debtor checked "No" in response to this question.

Shortly after Debtor submitted the Application, but before she signed the lease, Plaintiff conducted the SafeRent background check. The report confirmed that Debtor's current address on the date of the Application was Fahs Road, but reported that Debtor had previously lived in Harrisburg on Walnut Street, on King Arthurs Court, on Reel Street, on Herr Street, on Boas Street, and on Sir Lancelot Drive before she lived on Arbys Road. The report did not list the judgment against her for unpaid rent obtained by King's Manor. Plaintiff testified that before Debtor signed the lease, he discussed with her the additional addresses included on the SafeRent report. At that time she informed him that when she lived at the Walnut Street property, she was staying with relatives. Plaintiff contacted the landlord of the Fahs Road property, which he learned was leased to Black alone. However, he did not contact the landlord of the King's Manor for a reference or learn about the judgment before Debtor leased the Property.

Plaintiff asserts that if he had known about the judgment and Debtor's rental history, he would not have leased the Property to her and Black. Further, Plaintiff asserts that Debtor answered falsely when she responded "no" when asked whether she had ever "willfully and intentionally refused to pay rent when due." Debtor testified that she defaulted on the King Arthurs Court lease after she lost her job and was unable to pay her rent. She further stated that she understood "willfully and intentionally" to mean a deliberate act, rather than one imposed by her economic circumstances. Therefore, she asserts, her response to the question was truthful.

3

### III. Discussion

Exceptions to discharge listed in § 523 of the Bankruptcy Code are construed narrowly in favor of dischargeability. *Griffith, Stricklyer, Lerman, Solymos & Calkins v. Taylor (In re Taylor)*, 195 B.R. 624, 627 (Bankr. M.D. Pa. 1996). To prove that a debt should be excepted from discharge a plaintiff must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 288-89 (1991). Here, Plaintiff argues that Debtor should not be permitted to discharge his claim for unpaid rent and other damages under paragraphs (a)(2)(A) and (a)(6) of § 523. The claim under each paragraph will be considered separately.

    A.    *Exception from discharge under § 523(a)(2)(A)*

Section 523(a)(2)(A) provides that a debtor will not receive a discharge of a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

In order to prevail in a § 523(a)(2)(A) action, a creditor must prove each of the following five common law elements of fraud: (1) the debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deceive the creditor or to induce him to act upon the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained a loss as a proximate result of the representation. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998); *Chase Bank USA v. Ritter (In re Ritter)*, 404 B.R. 811, 822 (Bankr. E.D.

Pa. 2009); *First Assembly of God of Harrisburg v. Negley (In re Negley),* Adv. No. 1-08-ap-00045, 2008 WL 5158573 (Bankr. M.D. Pa. August 15, 2008). All five elements must be present for a court to find that a debt should be excepted from discharge.

Plaintiff relies on two specific representations Debtor made in the Application: (1) that her "prior address" had been 304 Arbys Road; and (2) that she did not "willfully and intentionally refuse" to pay rent when due. Plaintiff is correct that the Arbys Road property was not where Debtor resided immediately before she moved to Fahs Road. A common sense reading of the question suggests that a potential tenant should list the place where he or she lived immediately prior to the current residence listed. Therefore, I conclude that Debtor did not answer the question truthfully when she stated that her "prior address" was 304 Arbys Road. While the representation is false, Plaintiff has failed to establish a justifiable basis for his reliance on this statement.

The information provided in the SafeRent report[2], which Debtor knew would be obtained because she was required to pay for the report, disclosed that her "prior address" was on Walnut Street and that she had resided at several places between the time she lived on Arbys Road and Fahs Road. Plaintiff was aware that the information in the Application was incorrect, yet after considering her explanation for these discrepancies, he nonetheless decided to permit her to rent the Property. Debtor testified that Plaintiff asked her about her rental history after he received the

---

[2]The SafeRent report did not disclose that King's Manor had obtained a judgment against her for unpaid rent, which was the exact type of information Plaintiff was attempting to obtain. Plaintiff relied on the completeness of this report to his detriment. Although there were other avenues Plaintiff could have pursued, he mistakenly believed that he could not obtain a credit report, which, to the contrary, is authorized under the Fair Credit Reporting Act. *See* https://www.ftc.gov/system/files/documents/plain-language/bus49-using-consumer-reports-what-landlords-need-know.pdf.

background check. She admitted that she had lived at a different address immediately prior to Fahs Road and that when she left King's Manor she owed back rent. Accordingly, even if I find that Debtor made a false representation about her rental history, that she knew the representation was false when it was made, and that she intended to deceive Plaintiff by omitting the information, I do not find that Plaintiff justifiably relied on the information in the Application.[3]

The justifiable reliance standard does not require a party to investigate the truth of a statement "unless the falsity of the statement is readily apparent." *Field v. Mans*, 516 U.S. 59, 70-72 (1995). A creditor may not rely "upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id*. at 71. A "plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods." *Zirkel v. Tomlinson (In re Tomlinson)*, No. 96-A-1539, 1999 WL 294879 *7 (Bankr. N.D. Ill. May 10, 1999). Here, Plaintiff obtained a background check on both Debtor and Black because he had learned it was prudent not to rely on the representations of a potential tenant. He knew from the SafeRent report that she had resided at several locations before she moved to Fahs Road and after she left Arbys Road. He knew the places she had lived and how to contact her prior landlords, but he chose not to do so. Therefore, as to Debtor's statements about her prior rental history, Plaintiff has failed to establish that he justifiably relied on the information in the Application.

---

[3]Although I find that Debtor made a false representation about her prior address and that she knew that the representation was false, I do not reach the issue of whether Debtor intended to deceive Plaintiff as I find that Plaintiff did not rely on the information provided by Debtor.

Case 1:14-ap-00138-MDF    Doc 66    Filed 09/14/15    Entered 09/14/15 13:12:51    Desc
Main Document      Page 6 of 10

Plaintiff's other contention is that Debtor made a false statement on the Application when she denied that she had ever "willfully and intentionally refused to pay rent when due." Plaintiff cites the judgment held by King's Manor against Debtor for rent arrearages as proof that she had, in fact, willfully and intentionally refused to pay rent. He testified that if he had known about the 2009 judgment, he would not have rented the Property to her. But the Application does not specifically inquire as to whether a judgment for rent in arrears had been entered against her in the past. Plaintiff argues that the question asking whether she had willfully and intentionally refused to pay rent when due encompasses Debtor's situation where, admittedly, there were months in which she did not pay rent to King's Manor when it was due. Debtor interprets the question differently. She explained that she did not "refuse" to turn over rent monies in her possession, rather she did not pay the rent because she had no money with which to pay it. I agree that at best, the question in the Application is ambiguous.

The word "willful . . . is a word of many meanings, its construction often being influenced by its context." *Spies v. U.S.*, 317 U.S. 492, 497 (1943). It has been observed that "(willful) often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But, when used in a criminal statute, it generally means an act done with a bad purpose . . . without justifiable excuse . . . stubbornly, obstinately, perversely . . . . *U.S. v. Palermo*, 259 F.2d 872, 877 (3d Cir. 1958) *quoting U.S. v. Murdock*, 290 U.S. 389 (1933) (parentheses in original). Accordingly, in the absence of evidence to the contrary, it is reasonable for Debtor to have concluded that "willfully" meant without justifiable excuse and with a bad purpose.

7

Like the word "willfully," in the context of a criminal matter, the word "intentionally" is used to describe a defendant's action where specific intent is required for an action to constitute a crime. In the criminal law context, "intentionally" means "either that (1) it was [defendant's] conscious desire or purpose . . . to cause a certain result, or that (2) [defendant] knew that (he)(she) . . . would be practically certain to cause that result." *Pierre v. Atty. Gen. of U.S.*, 528 F.3d 180, 192 (3d Cir. 2008) (citing Third Circuit Jury Instructions § 5.03 (Sept. 2006)). In common parlance, "intentionally" means deliberately or willfully, making redundant the word "intentionally" in the phrase "willfully and "intentionally." Given the flexibility of the phrase used in this question, I cannot conclude that Debtor made a false representation when she stated that she had not ever "willfully and intentionally refused to pay rent when due." And, more precisely, I do not agree that the question, "Have you ever willfully and intentionally refused to pay rent when due?" may be equated with the question, "Have you ever had a judgment entered against you for nonpayment of rent?"

### B. Exception from discharge under § 523(a)(6)

Section 523(a)(6) provides that a "discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). "'Willful' and 'malicious' are terms of art" in the context of § 523(a)(6). *BankUnited v. Lehmann (In re Lehmann)*, 511 B.R. 729, 736 (Bankr. M.D. Pa. 2014). "Willful" refers to a deliberately inflicted or intentional injury, not just a deliberate or intentional act that might possibly lead to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61(1998). Accordingly, actions taken either for the specific purpose of causing

8

injury or that are substantially certain to cause an injury are deemed "willful" under § 523(a)(6). *In re Conte,* 33 F.3d 303, 307–09 (3d Cir. 1994).

The term "malice" and its derivative "malicious" also has a unique meaning under § 523(a)(6). Malice is defined as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Jou v. Adalian (In re Adalian),* 474 B.R. 150, 163 (Bankr. M.D. Pa. 2012); *AgChoice Farm Credit, ACA v. Glenn (In re Glenn),* 470 B.R. 731, 736 (Bankr. M.D. Pa. 2012). For malice to be found, a debtor must have had "actual knowledge" that harm to the creditor was at least substantially certain to occur. *See, e.g., In re Conte,* 33 F.3d at 307–09; *In re Glenn,* 470 B.R. at 736.

In the matter before me, the issue is whether Debtor deliberately and without just cause or excuse injured Plaintiff by wrongfully withholding or refusing to pay rent. While Debtor knew that her failure to pay the rent arrearage would injure Plaintiff, the evidence does not support a finding that she stopped paying rent deliberately to injure him. Debtor stopped paying rent because she lost her job as a home health aide. While the evidence also indicated that Debtor was able to supplement her income after she lost her home health aide job, the record does not show that those earnings were equivalent to her prior earnings. Therefore, I conclude that Plaintiff did not carry his burden of proving a willful and malicious injury as required by § 523(a)(6).

### IV. Conclusion

The situation in this adversary proceeding is all too familiar. Plaintiff, when evaluating whether to rent to a potential tenant, attempted to gather sufficient information from Debtor and other sources to determine whether Debtor was a good credit risk. Plaintiff knew that income

9

from both tenants was necessary for them to be able to afford the monthly rent. Plaintiff identified some "red flags," but decided to give Debtor and Black the benefit of the doubt. Unfortunately for both Debtor and Plaintiff, Debtor was unable to meet her obligations under the lease due to her loss of employment. Debtor was not forthcoming with Plaintiff in regard to her rental history, but Plaintiff knew that he needed to obtain objective information to assess Debtor's creditworthiness, and did not rely on her statements.

Based on the evidence presented, I find that Plaintiff was unable to meet his burden to prove that he justifiably relied on the information in the Application or that Debtor engaged in conduct that was intended to injure or substantially certain to injure Plaintiff. Plaintiff suffered a loss due to no wrongdoing on his part. Debtor failed to live up to her part of the bargain under the lease. This is sufficient to establish that Plaintiff held a valid claim against Debtor. However, it is insufficient to establish that the debt should be excepted from discharge under the stringent standards of 11 U.S.C. § 523(a)(2)(A) and (6). Therefore, judgment will be entered in favor of Debtor and against Plaintiff on both counts.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: September 14, 2015

10

Case 1:14-ap-00138-MDF    Doc 66    Filed 09/14/15    Entered 09/14/15 13:12:51    Desc
Main Document    Page 10 of 10